IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:18-cv-608 |
| | ) | |
| 23.74 ACRES OF LAND OWNED BY | ) | By: Elizabeth K. Dillon |
| MARK W. CRONK, ALISON G. CRONK | ) | United States District Judge |
| AND THE NATURE CONSERVANCY, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline. MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to acquire a permanent easement and temporary easements on numerous properties, including this property located in Roanoke County, with easement areas totaling 23.74 acres of land owned by Mark Cronk and Alison Cronk. The Nature Conservancy (TNC) holds a conservation easement on the property. On March 8, 2018, the court entered an order in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct*, Case No. 7:17-cv-492 (W.D. Va.) (Dkt. No. 718), granting MVP immediate possession of its easement on this property.

Before the court is a motion for summary judgment filed by TNC. TNC's conservation easement burdens approximately 900 acres of land near Roanoke, an area that includes the easements granted to MVP. The Cronks own this parcel of land subject to MVP's easements and TNC's conservation easement. TNC moves for summary judgment on the proper allocation,

between TNC and the Cronks, of the monies to be paid by MVP for the taking. For the reasons stated below, TNC's motion will be granted in part and denied in part.

I. BACKGROUND

TNC is a non-profit charitable organization whose mission is the conservation of land and water. As part of that mission, TNC seeks arrangements, including conservation easements, that will preserve land in its undeveloped condition, typically as relatively natural habitats of fish, wildlife, or plants, or similar ecosystems.

On December 16, 1996, James Woltz and his father John conveyed a conservation easement to TNC comprising approximately 900 acres of real property located in Roanoke County. A 2006 amendment expanded the TNC Easement by permanently protecting an additional 67.296 acres adjacent to the 900 acres initially protected. In 2005, after acquiring his father's interest, James Woltz sold the parcel of land that included the TNC Easement to Mark Cronk, who later included his wife, Alison Cronk, on the deed. The Cronks' property contains a total of 866.490 acres of land and remains subject to the TNC Easement.

Back in 1996, John Woltz obtained a Summary Appraisal Report setting forth the estimated value of the TNC Easement compared to the burdened property. The purpose of the appraisal was to obtain a federal tax deduction for the grant of the easement. According to the 1996 Appraisal, the market value of the land before the granting of the conservation easement was $930,800, and the market value of the land encumbered by the conservation easement was $105,000. The estimated value of the conservation easement as of December 1, 1996, was therefore $825,800, the difference between the value before and after the grant. The market value of the encumbered land was approximately 11.28% of its value before, and the conservation easement encompassed approximately 88.72% of the value of the land. The IRS

accepted the 1996 Appraisal, and John Woltz was permitted a deduction for the value of the conservation easement as a qualified conservation contribution. *See* 26 U.S.C. § 170(f)(3)(B)(iii).

The conservation easement includes the following provisions that are relevant to this motion:

> 16. **EXTINGUISHMENT**. The Grantors hereby agree that, at the time of the conveyance of this Conservation Easement to the Grantee, this Conservation Easement gives rise to a real property right, immediately vested in the Grantee, with a fair market value of the Conservation Easement as of the date of the conveyance that is at least equal to the proportionate value that this Conservation Easement at the time of the conveyance bears to the fair market value of the property as a whole at that time.
>
> That proportionate value of the Grantee's property rights shall remain constant. When a change in conditions takes place which makes impossible or impractical any continued protection of the Protected Property for conservation purposes, and the restrictions contained herein are extinguished by judicial proceeding, the Grantee, upon a subsequent sale, exchange or involuntary conversion of the Protected Property, shall be entitled to a portion of the proceeds at least equal to that proportionate value of the Conservation Easement. The Grantee shall use its share of the proceeds in a manner consistent with the conservation purposes set forth herein or for the protection of a "relatively natural habitat of fish, wildlife, or plants or similar ecosystem," as that phrase is used in and defined under P.L. 96-541, 26 U.S.C. 170(h)(4)(A)(ii), as amended and in regulations promulgated thereunder.
>
> 17. **EMINENT DOMAIN**. Whenever all or part of the Protected Property is taken in exercise of eminent domain by public, corporate, or other authority so as to abrogate the restrictions imposed by this Conservation Easement, the Grantors and the Grantee shall join in appropriate actions at the time of the taking to recover the full value of the taking and all incidental or direct damages resulting from it, and the proceeds shall be divided in accordance with the proportionate value of the Grantee's and Grantor's interests, and Grantee's proceeds shall be used as specified above. All expenses incurred by the Grantors and the Grantee in such action shall be paid out of the recovered

proceeds.

(James L. Woltz Affidavit (Woltz Aff.) Ex. B, Dkt. No. 7-3.)

The route of the MVP project includes a crossing of the parcel through the area protected by the conservation easement. The pipeline will take 8.03 acres in the permanent pipeline easement area, 3.30 acres of temporary access easement, and 12.41 acres of temporary workspace, totaling 23.74 acres of land, all of which is encumbered by the TNC Easement.

## II. DISCUSSION

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49. The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

The court is asked to resolve whether TNC is entitled to judgment as a matter of law regarding the proper apportionment between TNC and the Cronks of the amount in just compensation paid by MVP for the taking. TNC argues that it should recover the proportionate value of the conservation easement to the fair market value of the property at the time the conservation easement was granted, which is 88.72% according to the 1996 Appraisal. The Cronks agree that the 88.72% figure should be used for the 8.03 acres in the permanent pipeline easement area, with TNC entitled to 88.72% of the just compensation and the Cronks entitled to

11.28% of the just compensation. The parties are at odds over the proper allocation for the balance of the taking that includes the temporary access easement, the temporary workspace area, and damages to the residue of the property. TNC argues that the proportionate value applies to the entire amount of just compensation, and the Cronks agree only that the proportionate value applies to the permanent easement just compensation amount.

The parties' disagreement centers on the above-stated language in the conservation easement regarding extinguishment and abrogation. TNC argues that the areas under the temporary access and workplace easements will adversely affect its conservation easement and protected lands and waters adjacent to those areas. According to TNC, the proportionate value applies to the entire award of just compensation under the Treasury Regulations and the terms of the conservation easement – both of which have similar provisions. The Treasury Regulations and the terms of the conservation easement state that if the conservation easement is extinguished, making it impossible or impractical to continue the use for conservation purposes, then the proportionate value applies. TNC then asserts that the conservation easement will be partially extinguished by MVP's right of way. It further asserts that MVP's partial taking abrogates the conservation easement and that the conservation easement need not be completely abrogated, but may be only partially abrogated, for the proportionate value to apply.

In its reply brief and with regard to the period of time that the temporary easements are held by MVP, TNC then asserts, without citing to any authority and contrary to this court's understanding of easements, that MVP will temporarily take the Cronk's interest in that part of the property and TNC will temporarily give up its conservation easement with regard to that part of the property.[1] Then, when MVP's temporary easements cease, that part of the property

---

[1] Temporary easements burden a property and may restrict certain rights of the landowner, but they do not generally take the landowner's entire interest in the property which then reverts to the landowner when the

5

reverts back to the Cronks and the conservation easement is then back in place. (Reply Br. 3–4, Dkt. No. 11.) Then TNC asserts that "if there were some distinctive additional injury associated with the temporary area that is suffered by either the Cronks or TNC, that could be claimed by either party separately."[2] (*Id.* at 4.)

The Cronks point out that TNC, in its motion for summary judgment, stated that MVP's temporary easements would not extinguish the conservation easement, but only adversely affect it and adjacent areas. They note that "adversely affect" does not mean abrogate. According to the Cronks, it is undisputed that 99% of their property will still be subject to the conservation easement. They contend that the conservation easement is not extinguished or abrogated by MVP's temporary easements and TNC can put on evidence of its claim for any adverse effect on its conservation easement interests.

Because the Treasury Regulation language is reflected in the conservation easement terms, the court looks to the language of the conservation easement. Paragraph 16 addresses "extinguishment" and provides that when "a change in conditions takes place which makes impossible or impractical any continued protection of the Protected Property for conservation purposes, and the restrictions contained herein are extinguished by judicial proceeding, the Grantee . . . shall be entitled to a portion of the proceeds at least equal to that proportionate value of the Conservation Easement." (Woltz Aff. Ex. B ¶ 16.) The proceeds must then be used for conservation purposes. In the next paragraph, paragraph 17, titled "EMINENT DOMAIN," the easement provides that "[w]henever all or part of the Protected Property is taken in an exercise of

---

temporary easement ends. Rather, it appears that the Cronks' property would be burdened by two easements that both apply during the term of MVP's temporary easement. The conservation easement would also be subject to MVP's temporary easements. The conservation easement would not cease to exist and then reappear.

[2] This assertion appears to contradict TNC's motion for summary judgment asking for the proportionate value to apply to all aspects of the just compensation award.

eminent domain . . . so as to abrogate the restrictions imposed by this Conservation Easement . . . the proceeds shall be divided in accordance with the proportionate value of the Grantee's and Grantor's interests, and Grantee's proceeds shall be used as specified above [in the Extinguishment paragraph]." (*Id.* ¶ 17.)

The court considers this issue to be a matter of contract interpretation, governed by Virginia law. General rules of contract interpretation govern, and "the plain meaning of the contract controls." *Appalachian Power Co. v. Wagman Heavy Civil, Inc.*, Case No. 6:19-cv-00051, 2019 WL 6188303, at *4 (W.D. Va. Nov. 20, 2019). The document is construed as a whole, giving effect to all the language if the contract's parts can be read together without conflict. *Berry v. Klinger*, 300 S.E.2d 792, 796 (Va. 1983).

In looking to the plain meaning of the word "abrogate," the definitions appear to require an action that does away with a right – not just adversely affects it. *See* BLACK'S LAW DICTIONARY 6 (7th ed. 1999) (defining abrogate as to "abolish (a law or custom) by formal authoritative action; to annul or repeal"); BARRON'S LAW DICTIONARY 2-3 (5th ed. 2003) (defining abrogate as to "annul, destroy, revoke, or cancel; to put an end to; to do away with, to set aside"). Then, looking at the term "abrogate" read together with the use of the terms of the extinguishment paragraph, it appears that the change contemplated must make the restrictions of the conservation easement impossible or impractical for its purposes. So, it appears that more than just some, but possibly not all, of the rights set forth in the conservation easement need to have been burdened or affected.

With respect to the permanent easement and by agreement of the parties, it is clear the restrictions of the conservation easement have been abrogated. Therefore, the court agrees with the parties that the proportionate value applies to allocation of the just compensation award for

7

MVP's permanent easement. With respect to the temporary easements, there are genuine disputes of material fact precluding the grant of summary judgment. The parties disagree whether the conservation easement is abrogated in whole or in part. Moreover, the parties presented no evidence with regard to which restrictions were abrogated or "adversely affected" and which were not. The court lacks information to evaluate whether, and to what extent, the easement's restrictions are abrogated by the temporary easements. Because of this issue of fact regarding what restrictions in the conservation easement have been abrogated by MVP's temporary easements and because TNC has not made clear whether it is seeking summary judgment with regard to damages to the residual, the court will deny summary judgment except for the permanent easement damages.

III. CONCLUSION

Based on the foregoing, the court will enter an order granting TNC's motion for summary judgment on the allocation of proceeds between TNC and the Cronks with respect to MVP's permanent easement of 8.03 acres and denying it in all other respects.

Entered: March 31, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge