IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 7:18-cv-608 |
| 23.74 ACRES OF LAND OWNED BY MARK W. CRONK, ALISON G. CRONK AND THE NATURE CONSERVANCY, | ) By: Elizabeth K. Dillon <br> ) United States District Judge |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline. MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to acquire permanent and temporary easements on numerous properties. *See generally Mountain Valley Pipeline LLC v. Easements to Construct*, Civil Action No. 7:17-cv-492 (W.D. Va.). Individual cases were subsequently opened as to many of the properties, including this one. The property at issue in this case, with easement areas totaling 23.74 acres, is located in Roanoke County and is owned by Mark Cronk and Alison Cronk. The Nature Conservancy (TNC) holds a conservation easement on the property (the TNC Easement).[1] On March 8, 2018, the court entered an order in the primary condemnation case granting MVP immediate possession of the MVP easements on this property. *Id.*, Dkt. No. 718.

Before the court are cross-motions for summary judgment by the Cronks and TNC. At issue is the proper allocation of $565,000 in settlement proceeds received from MVP as just

---

[1] In their briefing, the parties use the term TNC Easement to mean both the easement itself and the document that created it. To avoid confusion, the court will use TNC Easement to refer to the easement, and the term Easement Contract to refer to the original document creating the easement.

compensation for MVP's taking of easements on the property. For the reasons stated below, the court will grant the Cronks' motion, deny TNC's motion, and award $548,970 of the settlement proceeds to the Cronks, with the balance of the settlement proceeds to TNC.

## I. BACKGROUND

**A. The Creation of the Conservation Easement and 1996 Valuation of the Property[2]**

TNC is a non-profit charitable organization whose mission is the conservation of land and water. As part of that mission, TNC seeks arrangements, including conservation easements, that will preserve land in its undeveloped condition, typically as relatively natural habitats of fish, wildlife, or plants, or similar ecosystems.

On December 16, 1996, James Woltz and his father John conveyed a conservation easement to TNC comprising approximately 900 acres of real property located in Roanoke County via the Easement Contract. *See supra* note 1. A 2006 amendment expanded the TNC Easement by permanently protecting an additional 67.296 acres adjacent to the 900 acres initially protected. In 2005, after acquiring his father's interest, James Woltz sold the parcel of land that included the TNC Easement to Mark Cronk, who later included his wife, Alison Cronk, on the deed. The Cronks' property contains a total of 866.49 acres of land and remains subject to the TNC Easement.

Back in 1996, John Woltz obtained an appraisal report setting forth the estimated value of the TNC Easement compared to the burdened property. The purpose of the appraisal was to obtain a federal tax deduction for the grant of the easement. According to the 1996 Appraisal, the market value of the land before the granting of the conservation easement was $930,800, and the market value of the land encumbered by the conservation easement was $105,000. The

---

[2] These facts were also discussed in the court's prior summary judgment opinion. (Dkt. No. 19.) The court recites them again within this opinion for the sake of completeness.

estimated value of the conservation easement as of December 1, 1996, was therefore $825,800, the difference between the value before and after the grant. The market value of the encumbered land was approximately 11.28% of its value before, and the conservation easement encompassed approximately 88.72% of the value of the land. The IRS accepted the 1996 Appraisal, and John Woltz was permitted a deduction for the value of the conservation easement as a qualified conservation contribution. *See* 26 U.S.C. § 170(f)(3)(B)(iii).

Also relevant to the parties' motions are several provisions from the Easement Contract:

> 16. **EXTINGUISHMENT**. The Grantors hereby agree that, at the time of the conveyance of this Conservation Easement to the Grantee, this Conservation Easement gives rise to a real property right, immediately vested in the Grantee, with a fair market value of the Conservation Easement as of the date of the conveyance that is at least equal to the proportionate value that this Conservation Easement at the time of the conveyance bears to the fair market value of the property as a whole at that time.
>
> That proportionate value of the Grantee's property rights shall remain constant. When a change in conditions takes place which makes impossible or impractical any continued protection of the Protected Property for conservation purposes, and the restrictions contained herein are extinguished by judicial proceeding, the Grantee, upon a subsequent sale, exchange or involuntary conversion of the Protected Property, shall be entitled to a portion of the proceeds at least equal to that proportionate value of the Conservation Easement. The Grantee shall use its share of the proceeds in a manner consistent with the conservation purposes set forth herein or for the protection of a "relatively natural habitat of fish, wildlife, or plants or similar ecosystem," as that phrase is used in and defined under P.L. 96-541, 26 U.S.C. 170(h)(4)(A)(ii), as amended and in regulations promulgated thereunder.
>
> 17. **EMINENT DOMAIN.** Whenever all or part of the Protected Property is taken in exercise of eminent domain by public, corporate, or other authority so as to abrogate the restrictions imposed by this Conservation Easement, the Grantors and the Grantee shall join in appropriate actions at the time of the taking to recover the full value of the taking and all incidental or direct damages resulting from it, and the proceeds shall be divided in

> accordance with the proportionate value of the Grantee's and Grantor's interests, and Grantee's proceeds shall be used as specified above. All expenses incurred by the Grantors and the Grantee in such action shall be paid out of the recovered proceeds.

(Easement Contract, Dkt. No. 26-1.)

**B. MVP's Easements and Settlement Allocation**

The route of the MVP project includes a crossing of the parcel through the area protected by the TNC Easement. The pipeline will take 8.03 acres in the permanent pipeline easement area, 3.30 acres of temporary access easement, and 12.41 acres of temporary workspace, totaling 23.74 acres of land, all of which is encumbered by the TNC Easement.

Previously, the court granted TNC's motion for summary judgment on the allocation of just compensation proceeds in this action with respect to MVP's taking of the permanent 8.03-acre easement only: 88.72% to TNC and 11.28% to the Cronks. The court denied TNC's motion in all other respects. (Dkt. Nos. 19, 20.) The court summarized its reasoning as follows:

> With respect to the permanent easement and by agreement of the parties, it is clear the restrictions of the conservation easement have been abrogated. Therefore, the court agrees with the parties that the proportionate value applies to allocation of the just compensation award for MVP's permanent easement. With respect to the temporary easements, there are genuine disputes of material fact precluding the grant of summary judgment. The parties disagree whether the conservation easement is abrogated in whole or in part. Moreover, the parties presented no evidence with regard to which restrictions were abrogated or "adversely affected" and which were not. The court lacks information to evaluate whether, and to what extent, the easement's restrictions are abrogated by the temporary easements. Because of this issue of fact regarding what restrictions in the conservation easement have been abrogated by MVP's temporary easements and because TNC has not made clear whether it is seeking summary judgment with regard to damages to the residual, the court will deny summary judgment except for the permanent easement damages.

(Mem. Op. 8, Dkt. No. 19.)

4

The Cronks and TNC subsequently reached a settlement with MVP for $565,000 as to all of the easements, separately allocating an amount to each easement. Specifically, of the total amount, the parties agree and stipulate to the following allocation:

- $1,980 for the Temporary Access Easement;
- $7,446 for the Temporary Workspace Easement;
- $700 for the Additional Temporary Workspace Easement;
- $18,068 for the Permanent Pipeline Easement; and
- $536,806 for damages to the remainder.

The Cronks and TNC now both move for summary judgment as to the proper allocation of the settlement proceeds between the two parties. The Cronks argue they are entitled to $548,970, which represents 11.28% of the amount allocated for the permanent easement and 100% of the just compensation allocated to all of the other easements. TNC argues it should receive at least $294,494, with the remaining balance subject to future adjudication. Thus, it seeks partial judgment in its favor of $294,494,[3] leaving the remaining amount $242,312, subject to future proceedings "by trial or other summary judgment." (TNC Mot. Partial Summ. J. 2, Dkt. No. 23.)

## II.  DISCUSSION

### A. Summary Judgment

Parties in condemnation proceedings may move for summary judgment pursuant to Rule 56 because Rule 71.1 does not provide otherwise. *United States v. 8.929 Acres*, 36 F.4th 240, 251–52 (4th Cir. 2022). Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[3] The court discusses how TNC arrived at its number in context below.

law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49. The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 524 (4th Cir. 2003). When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion. *Id.*

**B. Cronks' Motion for Summary Judgment**

The court's ruling that TNC was entitled to compensation for the permanent easement based on the proportionate allocation determined in 1996 condemnation award proceedings (88.72%/11.28%) was predicated on its finding that the permanent pipeline easement abrogated the conservation easement restrictions for that portion of the property. Thus, pursuant to the court's reading of paragraphs 16 and 17 of the Easement Contract, the proceeds were to be divided in accordance with the proportionate value of the respective interests of the Cronks and TNC.

In determining their respective interests for the remaining easements, the court first addresses whether MVP's other easements have abrogated the TNC Easement. As noted in the

court's prior opinion, an effect on property "abrogates" a right if it does away with or destroys that right—not just adversely affects it. (Mem. Op. 7.)

The Cronks argue—and have provided undisputed evidence—that the TNC Easement is only extinguished and/or abrogated with respect to the 8.03 acres of the property encumbered by MVP's permanent pipeline easement. Outside of the 8.03-acre permanent pipeline easement, the TNC Easement remains in full force and effect. (Statement of Undisputed Material Facts (SUMF) ¶¶ 7–15, Dkt. No. 26.) Indeed, TNC's deputy state director for Virginia, Bill Kitrell, has testified—as a Rule 30(b)(6) representative for TNC—that it is TNC's position that the TNC Easement has not been extinguished on any area outside of the permanent easement. (Deposition of Bill Kittrell 33–37, Dkt. No 26-2.) Put differently, while the TNC Easement may have been adversely affected by MVP's use of the temporary easements, those effects were fleeting, and did not destroy the TNC Easement. And it is undisputed that TNC can still enforce the restrictions of its conservation easement outside of the permanent easement, including on the entire remainder of the property. Further, TNC has not created any issues of fact as to whether it has suffered any damage to its interests aside from the loss of conservation restrictions on the permanent easement. (*See* SUMF ¶ 16 ("TNC has not performed any independent valuation of the impacts to the property, nor [does it] intend[] to offer any evidence of the fair market value of the TNC Easement."), ¶ 18 ("TNC has not placed a monetary value on the impacts it believes the MVP Pipeline is having on its easement rights.").)

The parties have not cited to any cases dealing with a similar issue, and the court's research does not disclose any case authority on point. The Virginia Code provides that in an eminent domain proceeding, "the holder of the conservation easement shall be compensated for the value of the easement," but it does not otherwise explain how the compensation amount is to

7

be determined, or how any compensation should be apportioned between the landowner and the easement-holder. *See* Va. Code Ann. § 10.1-1010(F).

As discussed next (and in conjunction with TNC's summary judgment motion), TNC's admissions and the court's conclusion that there has been no abrogation, in conjunction with the language in paragraphs 16 and 17 of the Easement Contract, compel the conclusion that TNC is not entitled to any just compensation for MVP's taking of the temporary easements or for any damages to the remainder of the property.

**C. TNC's Motion for Partial Summary Judgment**

In its own motion for summary judgment, TNC seeks partial summary judgment and asks the court to set a ceiling on the Cronks' recovery of the settlement proceedings (or, as TNC also describes it, to set a floor for its own recovery). Relying on the principle that a "landowner cannot recover damages in excess of his property's value," TNC argues that the Cronks cannot obtain more than 11.28% of the value of the property without the conservation easement. (TNC Mem. Supp. Summ. J. 1–2, Dkt. No. 24 (citing *State Highway & Transp. Comm'r v. Allmond*, 257 S.E.2d 832 (Va. 1979)). And for support, TNC relies on the 1996 valuation, approved by the IRS, which TNC interprets as determining that 88.72% of the value of the land belonged to TNC, and the remaining 11.28% to the Cronks' predecessor.

Then, in determining the total value of the Cronks' land, TNC notes the parties' stipulation that the value of the Cronks' property without the TNC Easement is $2,166,225. After deducting $18,068 for the permanent easement, the property's value is $2,148,157. TNC argues that the Conservation Easement limits the Cronks to no more than 11.28% of that portion of the property's value without the TNC Easement (11.28% of $2,148,157, or $242,312). TNC thus moves for partial summary judgment in its favor in the amount of $294,494 ($565,000

minus $242,312), with the balance to be adjudicated in a subsequent motion or at trial. That is, it argues that the Cronks are not entitled to any more than $242,312. TNC cites no case law in support of its argument or calculations.

TNC emphasizes the contract language, cited above, that "this Conservation Easement gives rise to a *real property right, immediately vested* in the Grantee, with a fair market value of the Conservation Easement as of the date of the conveyance that is at least equal to the proportionate value that this Conservation Easement at the time of the conveyance bears to the fair market value of the property as a whole at that time." (TNC Easement, Dkt. No. 26-1, ¶ 16 (emphasis added).) Paragraph 16 also provides that "proportionate value of the Grantee's property rights shall remain constant." (*Id.*) TNC further cites the following language in paragraph 17:

> Whenever all *or part* of the Protected Property is taken in exercise of eminent domain, by public, corporate, or other authority so as to abrogate the restrictions imposed by this Conservation Easement, the Grantors and the Grantee shall join in appropriate actions at the time of the taking *to recover the full value of the taking and all incidental or direct damages resulting from it, and the proceeds shall be divided in accordance with the proportionate value of the Grantee's and Grantor's interests*.

(TNC Easement ¶ 17 (emphasis added).) According to TNC, the proportional split should apply to the full amount of the proceeds from MVP because it is not necessary for the taking to abrogate the entirety of the property. Instead, TNC insists that if the taking of even part of the property abrogates the TNC Easement, even if just on that part, then Paragraph 17 mandates that the proportional split be applied to all of the just compensation paid (including any paid for the remainder). Because the parties agree—and the court previously ruled—that the restrictions imposed by the TNC Easement were abrogated as to a part of the property (the permanent

9

easement), TNC contends that is sufficient for it to receive the proportional value as to the entire amount of just compensation.

The court does not read the contract so broadly. Indeed, TNC's argument glosses over the abrogation language in paragraph 17—"so as to abrogate the restrictions imposed by this Conservation Easement." (*Id.*) As the parties agree and as the court already has ruled, the taking of the permanent easement has abrogated those restrictions *for that portion of the property*. But the remaining easements have not abrogated the restrictions imposed by the Conservation Easement, as TNC has admitted. Paragraph 17 instead supports the court's conclusion that the proportional split applies only to the monies allocated for the permanent easement, because the TNC Easement has been abrogated only on that portion of the land.

The court's conclusion also makes logical and equitable sense. If, after MVP's taking of the permanent easement, the Cronks had sold the entirety of their property to a new owner, TNC would not have been entitled to any payment from the sale of the property, so long as its easements remained intact, as is the case. The property would include the entirety of the remainder and would continue to be subject to both MVP's permanent easement and the TNC Easement. But TNC has no argument that it would be entitled to recover any portion of the purchase proceeds in a private sale; instead, that money would have gone to the Cronks. The result should not be different, especially where TNC maintains its easement on the remaining parts of the property, simply because a portion of the property was "sold" in the form of easements to MVP via just compensation, as opposed to a private purchaser on the open market.

Viewed through a different lens, and looking only at the damages to the remainder—the bulk of the just compensation payment ($536,806 of the $565,000)—the same result obtains. TNC is seeking 88% of the just compensation based on the diminution in value to the remainder,

10

but if the Cronks were to sell their property a year from now, any lower price in fair market value would be absorbed entirely by the Cronks. To say that TNC should be entitled to 88% of the just compensation for the damage of the remainder *and* that TNC's interest in its easement has not been abrogated would be to give TNC a windfall.

TNC counters that the Cronks' interpretation, as now adopted by the court, will result in an unjust windfall for the Cronks because the remainder damages amount was based on the value of the Cronks' property without the TNC Easement—$2,166,225. (*See* Decl. of George W. Barlow, III, Dkt. No. 27-2.) First of all, TNC offers no evidence about the *current* value of the Cronks' property *with* the TNC Easement (but no MVP Easement) versus the value of the property *with* the TNC Easement and without the MVP Easement. TNC relies on the valuation performed in 1996, which was the basis of the contractual 88.72/11.28% split, but that valuation is not evidence of the value of the Cronks' property burdened by the TNC Easement a quarter-century later.

A careful examination of TNC's argument, moreover, shows its failings. TNC insists that the Cronks will be receiving a windfall as a result of the court's ruling. It explains that condemnation law requires that just compensation be determined based on the value of the property *without* the conservation easement. The value of the land without the TNC Easement is considerably higher than the property with the easement, though, because the conservation easement severely restricts the Cronks' ability to use the property. Conversely, if the value of the property for "just compensation" purposes had been determined *with* the Conservation easement—which TNC says effectively represents the Cronks' interest in the property—the compensation settlement would have been significantly lower. It reasons that "[a]ny allocation of proceeds to the Cronks must reflect only the value of the limited and burdened estate that they

11

hold, and the allocation to TNC must reflect the value of the limitations that were imposed by the Conservation Easement, and which remain in place." (TNC Mem. Supp. Mot. Summ. J. 7, Dkt. No. 24.).

While this argument has some initial appeal, it ignores that TNC has retained *all* of its real property rights with regard to the property (with the exception of the permanent easement) and that it thus has not lost the value of any of those rights. TNC emphasizes that the value of the land to it reflects "both the benefits that accrue to conservation interests" and also "the value inherent in the ability of TNC to enforce the limitations and the surrender by the Cronks of the Cronks' ability to otherwise use the property." (*Id.* at 6–7.) None of those values, however, have been affected by MVP's easements or any damage to the remainder. The TNC Easement remains in full force and effect and it can still prohibit the Cronks—and any subsequent purchaser—from using the property (except the permanent easement) in violation of the Easement Contract. Thus, aside from the permanent easement, the value of the land to TNC has not been abrogated by MVP's takings.[4]

For the foregoing reasons, the court concludes that the Easement Contract only requires a proportional split of just compensation proceeds for portions of the land where there has been abrogation of the restrictive covenants in the TNC Easement. Here, only the permanent

---

[4] The Cronks also argue, in their summary judgment motion, that TNC cannot establish a non-contractual claim for damages. In response, TNC states that it could prove such a claim, but so far, has chosen not to. TNC was required by Rule 56 to either come forward with admissible evidence in response to the Cronks' motion for summary judgment or show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d). Moreover, TNC has maintained in its discovery responses that its only claim for just compensation in this matter is based on the proportional split formula of the TNC Easement. (Dkt. No. 32-1; SUMF ¶¶ 16–18.) TNC's choice to not follow the correct procedures, for strategic reasons or otherwise, does not justify the denial of the Cronks' motion for summary judgment. The court considers any claim for just compensation by TNC not based on the proportional split formula of the TNC Easement to be forfeited. In any event, the supposed frustration of its conservation plans is based on the unsworn, non-expert statements of several of its employees, not on sworn testimony. (*See* Dkt. No. 27-1 (report from TNC employees explaining how the permanent easement has an adverse impact on the TNC Easement outside of the permanent easement).)

easement abrogated TNC's rights. TNC is thus entitled to payment only for the permanent easement.

## III. CONCLUSION

For the reasons stated in this opinion, the court will grant the Cronks' motion for summary judgment and deny TNC's motion for partial summary judgment. The court will issue an appropriate order granting and denying the respective motions and setting forth the proper allocation of the MVP settlement proceeds between the Cronks and TNC.

Entered: January 8, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

13